[Civ. No. 5107. First Appellate District, Division One.—June 3, 1925.]

BURG BROS. (a Corporation), Appellant, v. HENRI BER-CUT et al., Respondents.

BURG BROS. (a Corporation), Appellant, v. PETER BER-CUT et al., Respondents.

[1] VENDOR AND VENDEE—CONTRACT OF SALE—FORFEITURE PROVISION— CONDITIONS FOR BENEFIT OF VENDOR.—A provision in a contract for the sale of real property that, in the event of the failure of the vendee to comply with the terms and conditions of the agreement, the vendor shall be released from all obligations in

---

1. See 25 Cal. Jur. 608; 27 R. C. L. 465.

law or in equity to transfer and convey the property, and the vendee shall forfeit all rights under the agreement and all rights to any and all moneys which he shall theretofore have paid thereunder, as liquidated damages and not as a penalty, is intended for the benefit of the vendor by which, at his option, in case of the vendee's default, he is relieved of his obligation to convey the property contracted to be sold and may regard as forfeited all payments theretofore made by the vendee, or waiving the forfeiture, he may require the vendee to complete his contract.

[2] ID.—RESCISSION BY DEFAULT—OPTION OF VENDEE.—Under such forfeiture provision the vendee is given no option, but must abide by the election of the vendor, and the vendee may not work a rescission of the contract by mere default on his part in the payment of the purchase price.

[3] ID.—APPLICATION OF PAYMENTS AS RENTAL—OPTION RIGHTS OF VENDOR—ELECTION OF REMEDIES.—The addition to such forfeiture clause of additional provisions to the effect that the exercise of the vendor's right of forfeiture is conditioned upon the continuance of the failure of the vendee to perform "for a period of 60 days after performance due" and that the moneys paid prior to the exercise of such right "shall be applied as rent for the use of said premises . . . and expenses occasioned by such default" do not constitute an abridgment of the vendor's right to exercise the option afforded him by law, in the matter of election of remedies.

[4] ID.—ORAL CONTRACT—PART PAYMENT—ABSENCE OF POSSESSION—STATUTE OF FRAUDS.—Where the vendees under an oral contract relating to the purchase of real property do not take possession of the property contracted to be sold, the mere making of certain payments on the purchase price is not part performance sufficient to avoid the effect of the statute of frauds.

[5] ID.—ABSENCE OF NOVATION—RIGHT TO SUE UPON ORIGINAL CONTRACT.—Where the original written contracts between the vendor and vendees were not canceled or superseded by the subsequent oral agreements relating to the purchase of the property, and (as shown by the pleadings and proof) such original written contracts were in force and effect at the time of the commencement of the action, relief under such contracts should not have been denied, even though the subsequent oral agreements did not meet the demands of the statute of frauds.

[6] ID.—ELECTION OF REMEDIES—EQUITY—ADEQUACY OF CONSIDERATION—PLEADING—PROOF.—Where the vendor files his bill in equity

---

4. See 25 **Cal. Jur.** 480; 25 **R. C. L.** 267.
6. See 25 **Cal. Jur.** 504; 27 **R. C. L.** 333.

asking for the specific performance of the contract he must allege and prove that the consideration provided for in the contract sought to be enforced is adequate and that the contract is just and reasonable to the defendant; but the vendor is not compelled to adopt that form of remedy. Instead of doing so he may, even where he has retained legal title·to the land, bring an action at law merely for the recovery of the debt; and in doing so he thereby waives his security and it becomes unnecessary for him to allege or prove that the consideration for the contract was fair and adequate.

[7] ID. — INSUFFICIENT PLEADINGS AND PROOF — RELIEF IN LAW — MONEY JUDGMENT.—Where the original action filed by the vendor is merely for the recovery of the debt, but thereafter and evidently for the purpose of meeting the objections made by the vendees on their motion for a nonsuit the vendor amends its complaint so as to allege that the contract was fair and equitable, and thereafter opens its case to offer proof in support of those allegations, the fact that the pleadings and proof upon the issue of the adequacy of the consideration are wholly inadequate will not operate to destroy the entire cause of action, but merely serve to deny to the vendor additional equitable relief; and such added allegations and proof may be eliminated entirely and the vendor still be entitled, under the allegations of the ·original complaint and in the absence of any proof whatever of an adequate consideration, to relief in law, namely, a judgment for the purchase money.

[8] ID.—EVIDENCE — STATUTE OF LIMITATIONS—NONSUIT.—Where the plaintiff in such action adduces evidence in support of the allegations of the complaint sufficient to maintain the action, as an action at law, as against the vendees under the original written contract of purchase, but not as against their assignees, and, although it appears that part of the demand sued upon was barred by the statute of limitations, the statute had not run against the balance, a motion for a nonsuit, as to the original vendees, should be denied.

---

(1) 39 **Cyc.**, p. 1359, n. 66, p. 1360, n. 67.   (2) 39 **Cyc.**, p. 1421, n. 19.   (3) 39 **Cyc.**, p. 1902, n. 22, p. 1903, n. 24.   (4) 27 **C. J.**, p. 349, n. 53.   (5) 39 **Cyc.**, p. 1350, n. 73.   (6) 39 **Cyc.**, p. 1954, n. 88.   (7) 39 **Cyc.**, p. 1901, n. 13.   (8) 38 **Cyc.**, p. 1551, n. 62, p. 1553, n. 90.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Edmund P. Mogan, Judge. Affirmed in part, reversed in part.

The facts are stated in the opinion of the court.

Wm. T. Kearney for Appellant.

Samuel T. Bush and Treat, Bush & Ogden for Respondents.

KNIGHT, J.—These two actions were tried together, and resulted in judgments of nonsuit, from which judgments plaintiff appeals.

The principal question presented is whether the defendants, as vendees, under installment contracts to purchase land, after having made part payment of the purchase price, may, under the forfeiture clause of said contracts, terminate the same, and, other than forfeiting the money previously paid, avoid further liability thereunder. **[1]** The forfeiture clause of the contract reads:

". . . in the event of a failure of the Buyer to comply with any of the terms or conditions of this agreement, *and the continuance of such failure for a period of 60 days after performance due,* the Seller shall be released from all obligations in law or in equity to transfer and convey said property, or any part thereof, and the Buyer, shall forfeit all rights under this agreement, and all rights to any and all moneys which he shall theretofore have paid hereunder *and said moneys shall be applied as rent for the use of said premises,* and as liquidated damages *and expenses occasioned by such default,* and not as a penalty." (Italics ours.)

Respondents contend in support of the judgments of nonsuit that on account of the language employed in said forfeiture clause said contracts were, in legal effect, options to purchase, and not agreements for the purchase and sale of the property (*California Land and Security Co.* v. *Ritchie,* 40 Cal. App. 254 [185 Pac. 625]; *Beckwith-Anderson Land Co.* v. *Allison,* 26 Cal. App. 475 [147 Pac. 482]), that by reason of said clause the vendees were given the right, at any time, to abandon the purchase of said property by forfeiting the moneys previously paid, and that said forfeiture constituted the exclusive remedy of the vendor in case of abandonment; that respondents having in fact abandoned the purchase of said property, said contracts became null and void, and gave to the vendor the right to retain the money already paid, but deprived him of any other remedy

(*Armstrong* v. *Irwin,* 26 Ariz. 1 [32 A. L. R. 609, 221 Pac. 222]).

It has been uniformly held in several cases in this state, however, that forfeiture clauses similar in substance and effect to the one now under consideration—except for the portions hereinabove italicized—are intended for the benefit of the vendor by which, at his option, in case of the vendee's default, he is relieved of his obligation to convey the property contracted to be sold and may regard as forfeited all payments theretofore made by the vendee, or waiving the forfeiture, he may require the vendee to complete his contract. **[2]** The vendee is given no option, but must abide by the election of the vendor (*New Richmond Land Co.* v. *Ivanovich,* 52 Cal. App. 222 [198 Pac. 221]; *Wilcoxson* v. *Stitt,* 65 Cal. 596 [52 Am. Rep. 310, 4 Pac. 629]; *Smith* v. *Mohn,* 87 Cal. 489 [25 Pac. 696]), and that the vendee may not work a rescission of the contract by mere default on his part in the payment of the purchase price (*Newton* v. *Hull,* 90 Cal. 487 [27 Pac. 429]). The rule announced appears to be grounded upon the proposition that the remedy provided for in said clause is but a declaration in express terms of what would have been the legal rights of the parties without such provision (*Glock* v. *Howard,* 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]).

**[3]** We are unable to agree with respondents' contention that the presence of those additional provisions hereinabove italicized, changed the meaning of the entire forfeiture clause, so as to remove the case from the operation of the universal rule established in this state by the cases above cited, and thus deprived the vendor of the right, granted him by law, to stand upon the contract, and sue to enforce its performance, when the vendee defaulted in making payments. An analysis of those additional provisions, in the light of the entire forfeiture clause, shows plainly, we think, that they do not constitute an abridgment of the vendor's right to exercise the option afforded him by law, in the matter of election of remedies, but pertain only to the application of the forfeited payments as a part of the measure of damages that shall be allowed in the event that the vendor elected to terminate the contract; and even in that regard said additional provisions would appear to be of

little value, because without them the measure of damages would be the same, and would necessarily include the rental value for the use of the premises during the vendee's occupation thereof under the contract, and also the expenses occasioned by the vendee's default in the performance of the contract.

The case of *Armstrong* v. *Irwin* (Arizona), *supra,* cited and relied on by respondents cannot be accepted as controlling the situation here for the reasons, first, that the court there took into consideration, in determining the question of the intention of the parties, other clauses of the contract and the evidence offered in support thereof, relating to the occupation and cultivation of the farming land which was the subject of the contract, and from which the court was able to find, as a fact, that the payments were required to be made in such sums and at such times as indicated that, in case of default it was the intention that a relation in the nature of landlord and tenant should arise. That element does not appear in the instant case. The contracts here pertain to unimproved city lots, which, so far as the evidence shows, were not utilized for any useful or profitable purpose during the life of the contract; secondly, the court's conclusion there, in holding that the vendor was restricted to the sole remedy provided for in the contract, is partly based upon the use in the forfeiture clause of the term "liquidated damages." In that respect the decision apparently is not in accord with the conclusions reached in the case of *New Richmond Land Co.* v. *Ivanovich, supra* (which was not cited in the Arizona case), wherein the forfeiture clause of the contract likewise provided that the forfeited payments should be applied as "liquidated damages," and even went farther and declared that upon the vendee's default in payment "the agreement should become void"; nevertheless, the court adhered to the principle established in the earlier California cases, and held that the vendor's right of election of remedies was not thereby restricted, but that upon the vendee's default he might still treat the contract as being in force, and sue for and recover the balance of the purchase price.

For the reasons stated we are of the opinion that the forfeiture clause of the contracts involved in these cases falls within the scope of the rule stated in *New Richmond*

*Land Co.* v. *Ivanovich, supra,* and in the other cases therein cited, and that the vendor, in the instant case, was not deprived, by the terms of said forfeiture clause, of the right to treat the contracts as being in force and to sue for the unpaid balance of the purchase price.

The other cases cited by respondent *California Land and Security Co.* v. *Ritchie, supra,* and *Beckwith-Anderson Co.* v. *Allison, supra,* are not in point for the reason that they were cases involving brokers' commissions, wherein the brokers secured from prospective buyers contracts providing, unconditionally, for the forfeiture of a deposit upon failure of the buyer to make the purchase, which clearly showed those contracts to be options to purchase without obligation beyond the forfeiture of the deposit.

The complaints in the present actions set forth the execution, on January 8, 1913, of written contracts for the sale and purchase of the land, fixing a purchase price for each of two parcels of land contracted to be sold in the sum of $2,250, of which amount $225 was paid at the time the contract was signed, and the balance was made payable in monthly installments of $40 each, with interest on deferred payments; that between January, 1913, and April, 1916, approximately $928.01, principal and interest, was paid on one contract, and $1,009.40, or thereabouts, was paid on the other contract; that no further payments were made on either contract until the year 1919. It is then alleged that in 1919 it was mutually agreed, in consideration of the waiver of accrued interest, that said contracts "should be renewed and extended," and that the vendees should "thereupon pay in part performance of said agreement of renewal" the sum of forty dollars and thereafter pay the monthly sum of forty dollars together with interest and taxes until the full amount of said purchase price specified in said contracts was paid. The evidence in this regard shows that these so-called renewed agreements were oral, and that thereafter two payments of forty dollars each were made on both contracts between the months of March and July, 1919, after which all payments ceased.

[4] Respondents contend that proof of part performance of these oral agreements was not sufficient to avoid the effect of the statute of frauds in that respondents did not take possession of the property contracted to be sold. If, in order

to maintain these actions, appellant is compelled to rely upon the oral agreements of 1919, there is much force in respondents' contention, for the evidence shows that neither at the time said oral agreements were made nor thereafter did respondents take possession of the land, in the manner required by the rule stated in the cases of *Hambey* v. *Wise,* 181 Cal. 286 [184 Pac. 9], and *Harper* v. *Goldsmith,* 156 Cal 245 [134 Am. St. Rep. 124, 28 L. R. A. (N. S.) 689, 104 Pac. 451]; consequently part performance of the oral agreements, such as was essential to meet the demands of the statute of frauds was not established. [5] But before appellant may be obliged to rely upon the oral agreements of 1919, the evidence must be such that the court is able to declare as a matter of law that the original written agreements of 1913 were canceled and superseded by the so-called renewed agreements of 1919. The evidence adduced in support of appellant's case fails to establish that fact. On the contrary, a *prima facie* showing was made that said written agreements of 1913 were not canceled or superseded by the oral agreements of 1919, but thereafter continued to be, and up to the time of the commencement of these actions were, in force. On this point the witness Burg testified that in 1919, after a number of unsuccessful attempts were made to collect the installments past due, he agreed that if respondent would resume and continue to make payments until the full purchase price was paid he would waive accrued interest; that the proposition was acted upon by respondents, by making two payments on each contract, after which the payments stopped; that he then considered the oral agreement at an end, and the obligation to pay the accrued interest revived. Burg further testified that the transactions of 1919 in fact resulted in an agreement for "renewal of payment" as distinguished from a "renewal of contract." Upon this same point the witness Bercut testified that in 1919 on the occasion mentioned, Burg offered to cancel all interest up to that time if he would resume payments; that he asked for some time to think it over and afterwards made two payments; but that he stopped making further payments because he "did not get anything to confirm" what Burg had said in reference to the accrued interest. True, there was some uncertainty on the part of counsel for appellant, during the

discussion before the trial court, as to whether the actions were founded upon the written contracts of 1913 or upon the oral contracts of 1919, or both. But inasmuch as the pleadings and proofs were sufficient to establish, *prima facie*, that the written contracts of 1913 were in force at the time of the commencement of suit, we are of the opinion that relief under those contracts should not have been denied. The question therefore of whether or not there was part performance of the oral agreements of 1919 becomes immaterial.

[6] Finally, respondents make the contention, that the allegations of the amendments to the complaints, and the proofs, by which it was sought to establish the fact that the contracts were just and reasonable were legally insufficient for that purpose. It may be conceded to be the law, as respondents contend, that where the vendor files his bill in equity asking for the specific performance of the contract he must allege and prove that the consideration provided for in the contract sought to be enforced is adequate and that the contract is just and reasonable to the defendant (*Joyce* v. *Tomasini,* 168 Cal. 235 [142 Pac. 67]), but it is also the law that the vendor is not compelled to adopt that form of remedy. Instead of doing so he may, even where he has retained legal title to the land, bring an action at law merely for the recovery of the debt; in doing so he thereby waives his security and it becomes unnecessary for him to allege or prove that the consideration for the contract was fair and adequate (*Amaranth Land Co.* v. *Cory,* 182 Cal. 66 [186 Pac. 786]).

[7] The form of complaints originally filed here contained no allegations that the contracts sued upon were fair, just and reasonable, and from which it might be reasonably concluded that appellant had adopted the latter form of action; but after the motions for nonsuit were made, and evidently for the purpose of meeting the objections made by respondents in support thereof, appellant amended its complaints so as to allege that the contracts were fair and equitable, and thereafter reopened its case to offer proof in support of those allegations. Counsel for appellant nevertheless insists that he has never sought and does not now seek relief in equity through specific performance, but that he is suing in law merely for the recovery of the debt.

Assuming, however, as respondent asserts, that the final position taken by counsel for appellant before the trial court in reference to this matter, was equivocal, and assuming further that said amendments and proof upon the issue of the adequacy of consideration were wholly insufficient, it is obvious, we think, that those matters did not operate to destroy the entire cause of action, but merely served to deny to appellant additional equitable relief which he might have obtained through a suit for specific performance; and that such allegations and proof might be eliminated entirely and appellant still be entitled, under the allegations of the original complaints and in the absence of any proof whatever of an adequate consideration, to relief in law, namely, a judgment for the purchase money. In other words, the matter of the allegations and proof upon the issue of a fair contract was vital only after the court reached the point of granting the relief; and although equitable relief might then have been denied, the right of the vendor to recover upon the debt would still remain. The trial court therefore was not justified in dismissing the actions upon the ground urged.

Summarizing, it appears that the complaints filed herein were susceptible of being construed as actions at law instituted by appellant as a vendor, who had retained legal title to the land, to recover the debts represented by the unpaid portions of the purchase money due under written contracts of sale, and for that purpose and upon that theory said complaints were legally sufficient to constitute causes of action.

[8] Evidence was adduced in support of those allegations sufficient to maintain the actions, as actions at law, against Henri Bercut, Peter Bercut and Celine Bercut, who were the original vendees under said agreements of 1913, but not as against their assignee Jean Bercut and Grant Meat Market (*Wilson* v. *Beazley*, 186 Cal. 437 [199 Pac. 772]; *Tarpey* v. *Curran*, 67 Cal. App. 575 [228 Pac. 62]). And although it appeared that part of the demand sued upon was barred by the statute of limitations, the statute had not run against the balance; in that state of the record— all inferences fairly deducible and every presumption fairly arising from the evidence being considered as facts proved in favor of appellant (*Gregg* v. *Western Pac. R. R. Co.,* 193

Cal. 212 [223 Pac. 553])—the motion for nonsuit, as to the original vendees, in our opinion, should have been denied.

The judgments are reversed as to respondents Henri Bercut, Peter Bercut, and Celine Bercut, and are affirmed as to respondents Jean Bercut and Grant Meat Market.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 3, 1925, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 30, 1925.

All the Justices concurred.