KIRK et al. v. ROBERTS et al.

No. 18,043; December 2, 1892.

31 Pac. 620.

**Assignment—Change of Possession.—**"Book Accounts and Bills Receivable, including all debts of every kind due [the assignor] from any person," are "things in action," and as such expressly exempt under Civil Code, section 3440, from the statutory rule requiring a valid transfer of personal property to be followed by immediate delivery and change of possession.[1]

**Assignment—Change of Possession.—H., Having Transferred** by assignment certain book accounts and bills receivable to plaintiff, in part payment of a debt and as security, retained possession thereof as agent to collect the same, and subsequently defendant was appointed his receiver and assignee in insolvency. Held, in an action for moneys collected by defendant on such accounts and notes assigned to plaintiff, where the complaint averred demand on defendant and refusal by him to pay, that it was not necessary to aver or prove nonpayment of plaintiff's claim, such fact being a matter of defense.

---

[1] Cited and approved in Merced Bank v. Price, 9 Cal. App. 187, 98 Pac. 388, where a note and mortgage were held to be, as being "things in action," subjects of lien without change of possession.

**Insolvency.—An Assignee in Insolvency Takes the Property of the insolvent subject to all the rights and equities of third persons attached to it in the hands of the insolvent.[1]**

APPEAL from Superior Court, Sacramento County; E. A. Bridgford, Judge.

Action by Kirk, Geary & Co. against F. B. Roberts, assignee of Walter R. Hall. Judgment for defendant. Plaintiffs appeal. Reversed.

Johnson, Johnson & Johnson for appellants; H. M. Albery for respondents.

BELCHER, C.—It is alleged in the complaint that on the twenty-third day of April, 1889, one Walter R. Hall was doing business in the town of Colusa, and was indebted to the plaintiffs in a certain large sum of money; that he was the owner of a large amount of book accounts and debts, due him from divers persons, and bills receivable; that on the day named he executed and delivered to the plaintiffs an agreement in writing, a copy of which is set out; that on the first day of August, 1889, he filed in the superior court of Colusa county his petition, schedules, and inventory in insolvency, and was thereupon adjudged to be an insolvent debtor; that defendant was appointed receiver, and afterward assignee, of the estate of the insolvent, and that he duly qualified and entered upon the discharge of his duties as such; that defendant, as such receiver, and assignee, took possession of all the property and estate of the insolvent, including the said book accounts, debts, and bills receivable, and thereafter collected of the money due on such accounts, debts, and bills a sum aggregating $2,000; that before the commencement of this action, and while defendant still retained in his possession the money so collected, plaintiffs demanded of him that he pay the same to them, but he wholly failed, refused and neglected to so pay the same or any part thereof. Where-

[1] Cited in Graham Paper Co. v. Pembroke, 124 Cal. 122, 71 Am. St. Rep. 26, 44 L. R. A. 633, 56 Pac. 628, as a case where the defendant was the assignee in insolvency, so that he stood in the shoes of the insolvent; and distinguished from a case where the defendant is a purchaser in good faith and for value, without notice, so that he stands in a better position than the assignor.

fore judgment is asked against the defendant for the sum named, with costs. The written agreement set out reads as follows:

"Whereas, I am this day indebted to the firm of Kirk, Geary & Co., of Sacramento, Cal., in the sum of five thousand four hundred thirty-nine dollars and fifty-nine cents, ($5,439.59,) $4,024.28 being balance due on merchandise account, and $1,415.31 being amount advanced by them to me for the purpose of paying the claims of Redington & Co. and Chas. A. Bayly against me; and whereas, I am desirous of providing for the payment of said indebtedness: Now, therefore, I do hereby agree that I will pay said firm at least two thousand seven hundred and fifty dollars ($2,750.00) within one year (1 yr.) from the date of this indenture, and to that end will make monthly remittances to said firm of as large an amount as I can; and for the purpose of further providing for the payment of said indebtedness, and in partial satisfaction thereof, (i. e., to the extent of the collections and remittances hereinafter referred to), I hereby assign and convey unto said firm of Kirk, Geary & Co. all my book accounts and bills receivable, including all debts of every kind due me from any person; and I hereby agree with the said firm to represent it as its agent henceforth in the collection of said bills and book accounts; and I will reduce the same into cash as speedily as possible, and will remit to said firm the proceeds of such collections as soon as I obtain the money thereon. The whole amount of my indebtedness to said firm shall be fully paid within two years from the date of this agreement, and said indebtedness shall bear interest from date, at the rate of eight per cent per annum, payable quarterly. This indebtedness, however, which is to be secured, further, by a mortgage to be executed by me and W. Y. Gamblin, in favor of said firm, shall be considered due at any and all times during the continuance of this agreement, at the option of said firm, without notice to me.

"In witness whereof I have hereunto set my hand this twenty-third day of April, in the year one thousand eight hundred and eighty-nine.

(Signed) "WALTER R. HALL.

"Witness: ALBERT M. JOHNSON."

A general demurrer to the complaint was interposed and overruled, and the defendant then answered. The answer admitted that defendant as receiver and assignee had collected on the bills and accounts which came into his hands as such the sum of $635.72, but denied that plaintiffs were the owners of the bills or accounts or that defendant was indebted to plaintiffs for the money collected thereon or otherwise. At the trial it was admitted that Hall ''duly executed the instrument set out in the complaint, and that, at the time of its execution, he owed the plaintiffs the amount mentioned in said instrument, and that thereafter he filed his petition in insolvency, and that defendant was appointed receiver and elected assignee of his estate as averred in said complaint, and that as receiver and assignee he had collected, and as assignee he holds, retains, and claims, the sums stated in the answer of defendant to have been collected of the book accounts, bills receivable, and debts mentioned in said written instrument; and that plaintiffs had demanded payment thereof, and that the defendant had not paid plaintiffs any part of his said collections.'' It was also admitted that all the book accounts, bills receivable, and debts due, specified in the said written instrument, were scheduled and specified in the insolvency proceedings of Hall, and that they came into the hands of the defendant as the assignee of Hall. Hall was called as a witness, and testified that he executed the paper set out in the complaint, and that he remained in possession of the book accounts and bills receivable until he filed his petition in insolvency, and then turned them over to defendant. The above was, in substance, all the evidence on which the case was tried and submitted. The court found, among other things, that Hall executed and delivered to plaintiffs the written instrument set out in the complaint, but ''did not sell, transfer, or convey the said book accounts, debts due him, or bills receivable, or anything referred to in said written instrument, to said plaintiffs; . . . . that said written instrument was intended and understood by the parties as a written evidence or memorandum of a then existing indebtedness from said Hall to said plaintiffs, intended as an assignment to secure a then existing indebtedness from said Hall to said plaintiffs; that there was no immediate or any delivery from Hall to plaintiffs of the book accounts or

bills receivable, or any thereof, mentioned in said written instrument, nor was there any actual or any change of possession thereof or any portion thereof''; ''that at the time said Hall was adjudged an insolvent debtor, as alleged in the complaint, to wit, on the first day of August, A. D. 1889, it is not alleged in the complaint, or shown by the evidence, that Hall was indebted to the said plaintiffs in any sum whatever, nor was he indebted to said plaintiffs in any sum of money at the time this action was commenced''; and ''that the complaint in this action does not state facts sufficient to constitute a cause of action.'' Judgment was accordingly entered that the plaintiffs take nothing by their action. The plaintiffs moved for a new trial, and the appeal is from the order denying their motion.

It is evident that the conclusions of the court were based upon the theory that the plaintiffs could not recover for two reasons: (1) Because the transfer from Hall to them was not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred; and (2) because there was no averment in the complaint, or proof on the part of the plaintiffs, that the indebtedness due from Hall to them had not been paid. We do not think this theory sound. The instrument was clearly intended as an assignment of the accounts, bills and debts mentioned—whether absolutely or as security is immaterial —and, as between the parties, it unquestionably operated to transfer them to plaintiffs, and gave the plaintiffs a right to have the moneys when collected applied to the payment of their debt. The ''things transferred'' were ''things in action,'' commonly called ''choses in action,'' and were expressly excepted from the operation of the rule declared in section 3440 of the Civil Code. An assignee in insolvency has only such powers as are given him by the insolvent act. He may take into his possession all the estate of the debtor, and may sue in his own name and recover all the estate, debts, and things in action belonging or due to the debtor, and may also have and recover from any person receiving a conveyance, gift, transfer, payment, or assignment, made contrary to the provisions of the act, the property so conveyed or transferred: Secs. 21, 55. But unless the transfer is made contrary to the provisions of the insolvent act, and is thus

tainted with fraud, the assignee takes the property of the insolvent, subject to all such rights and equities of third persons as were attached to it in the hands of the insolvent. This is a well-settled rule under the bankrupt act, and we think it equally applicable to our insolvent act: Ex parte Newhall, 2 Story, 360; Mitchell v. Winslow, 2 Story, 631; Yeatman v. Institution, 95 U. S. 764, 24 L. Ed. 589; Hauselt v. Harrison, 105 U. S. 406, 26 L. Ed. 1075. Here there is no pretense that the transfer to the plaintiffs was fraudulent or contrary to any of the provisions of the insolvent act, and hence the fact that there was no immediate delivery nor any actual change of possession of the things transferred did not justify the court in denying to the plaintiffs the relief asked.

The second proposition, that plaintiffs could not recover because they failed to allege or prove that Hall's indebtedness to them had not been paid, was probably based upon the supposed authority of cases holding that a complaint to recover money due on contract is fatally defective unless it avers nonpayment. These cases, however, are not in point here. The complaint did aver demand made upon defendant for the money sought to be recovered, and that he wholly failed and refused to pay the same. We are cited to no case, and we know of none, which holds, in effect, that it was necessary to allege the nonpayment of Hall's indebtedness, and in our opinion such an allegation was not necessary. When one obtains an interest in a chose in action, by indorsement or transfer, the presumption is that that interest was obtained for value, and that it continues in the holder, until the contrary is shown. The point has several times been made that one suing on a promissory note, as maker or indorsee, should allege that he was still the owner and holder of the note, but it has always been held that no such averment was required: Poorman v. Mills, 35 Cal. 118, 95 Am. Dec. 90; Hook v. White, 36 Cal. 299. Here, as we have seen, the plaintiffs obtained an interest in the accounts, bills, and debts transferred to them by Hall. The transfer was doubtless made to secure the payment of Hall's indebtedness to them, but if so, no presumption can be indulged that the indebtedness had been paid, and the interest had therefore reverted to the assignor. If such were the fact, it was a matter of defense, and the burden was upon the defendant

to show it.  It will be observed that no proof of the payment of Hall's indebtedness was before the court, and therefore the finding that he was not indebted to the plaintiffs in any sum of money at the time this action was commenced was wholly unjustified by the evidence.  In our opinion, the order appealed from should be reversed and the cause remanded for a new trial, and we so advise.

We concur: Foote, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order appealed from is reversed and the cause remanded for a new trial.